**Calloway COMBS, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 1, 1964.

M. B. Fields, Hazard, for appellant.

Robert Matthews, Atty. Gen., Joe Nagle, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Calloway Combs, Jr., was convicted of the crime of murder and sentenced to life imprisonment.

On the afternoon of May 1, 1963, Grover Fugate, age 76, and Ira Cross, age 82, were drinking beer in a tavern in Perry County. Late in the afternoon they were joined by Calloway Combs, Jr., age 20. They drank for a while, then Combs announced that he had to return home. It was suggested instead that they go to the rooming house where Cross and Fugate were staying. They gave Combs $1.20 with which to purchase a bottle of wine. Cross and Fugate went immediately to the rooming house and had supper. Not long afterwards Combs returned with a fifth of wine and ate his supper. They all went to Fugate's room where Combs was to spend the night after they had disposed of the wine. They drank for some time and Combs then left for the purpose of making a telephone call to his wife who was expected to return home from Ohio on a bus that night. Cross went to his own room and Fugate stayed in his room. This was early in the morning of the next day. About two o'clock Combs returned, a difficulty arose, and Combs struck Fugate with a Seven-up bottle. He suffered cuts, bruises and a concussion, and died about seven days later from a massive blood clot on the brain. Cross testified that from his room he saw Combs return and enter Fugate's room. He heard Fugate call out the name "Junior" but that was all that was intelligible to him. Combs then came out of the room rapidly and left the building. Another witness, Venus Pilkin, a waitress who lived on the premises and who had a room near that occupied by Fugate, testified that on the night of the trouble she was unable to sleep and sat up and read a magazine. It was a warm rather humid night and she had left her door open, as had Cross, to obtain better circulation of air. During the evening she heard the men talking in the other room, but did not pay much attention to the conversation. She did testify, however, that she heard Combs ask Fugate for money with which to buy whiskey and that Fugate had told him he did not have any change. Thereupon both of them tried to persuade Cross to give them money for that purpose. Soon thereafter she saw Combs come out of the room and pass her door. About one and one half hours later she saw Combs return and she heard Fugate say, "Hey, son, what are you doing here?", which was followed by the sound of a blow. Combs then ran out of the door and, in his haste, hit the door-facing of her room. In a few minutes Fugate came out of his room where he was joined by Cross, and Fugate said, "Junior Combs, that boy that was here tonight, hit me." Soon afterwards Cross and Fugate left and went to the police station. Fugate stayed at the boarding house for about two days and then went to the hospital where he died.

Junior Combs testified in his own behalf. His testimony as to the events which preceded the fatality generally agreed with that above outlined. His story varied to some extent because he stated that while they were drinking, Fugate began to talk about the people he had killed and later when the wine was all gone Fugate became angry and jerked out a knife and backed him into a corner. He stated that he hit Fugate one time, but Fugate kept coming and he hit him again with a Seven-up bottle. Fugate staggered back and Combs ran out of the door and left the boarding house.

Appellant contends that the court erred in failing to instruct the jury on the full law of the case. The court gave five instructions. The first submitted the crime of

murder; the second, self defense; the third defined the word "wilful" and the expression "with malice aforethought"; the fourth, the question of whether a Seven-up bottle was such an instrument as was reasonably calculated to produce death when used by a person of defendant's physical strength; the fifth was a reasonable doubt instruction. The fourth instruction was not tied into any of the other instructions and perhaps should not have been given. Under the instructions the jury had no alternative but to find appellant guilty of murder and fix his punishment at life imprisonment or death, or to find him not guilty under the self-defense instruction.

■ It has been held that if there is any evidence that tends to show that the crime was of less magnitude than murder, it is the duty of the court to give an instruction on such other phases of the case. Benson v. Commonwealth, 290 Ky. 713, 162 S.W.2d 538. In Shorter v. Commonwealth, 252 Ky. 472, 67 S.W.2d 695, it was pointed out that if there was any evidence tending to show that the homicide was manslaughter, the accused was entitled to an instruction upon that hypothesis.

There is no showing in this case that Combs and Fugate, before the final incident, had borne any ill will toward each other or had had previous trouble; to the contrary, the men seem to have been friends and drinking companions. The character of weapon used does not indicate that there was any preparation by appellant to commit a murder. His seizure of the Seven-up bottle seems to have been an improvisation of the moment and the choice of the weapon, to a certain extent, tends to negate the idea that Combs intended to inflict a fatal injury.

■ It was said in Pennington v. Commonwealth, Ky., 344 S.W.2d 407: "Under such circumstances the jury should have the right to determine whether the killing was done with malice aforethought, in sudden affray without malice, or in self-defense." In addition this case was tried after KRS 435.022 became effective on June 14, 1962, wherein the legislature for the first time defined involuntary manslaughter in two degrees of that crime. We believe the evidence indicated circumstances which require that the jury be instructed on that section of the statute. See, Lambert v. Commonwealth, Ky., 377 S.W.2d 76.

The judgment is therefore reversed and the case remanded for a new trial in conformity with this opinion.

MONTGOMERY, J., dissents on ground that a voluntary manslaughter instruction should not be given.