Robert A. PRATHER,
Petitioner-Appellant,

v.

John REES, Warden,
Respondent-Appellee.

No. 85–6124.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 17, 1986.

Decided July 6, 1987.
Rehearing and Rehearing En Banc
Denied Aug. 19, 1987.

Andrew T. Coiner (argued), Lexington, Ky., for petitioner-appellant.

David Armstrong, Atty. Gen. of Kentucky, Frankfort, Ky., David Smith (argued) Kay Winebrenner, for respondent-appellee.

Before NELSON and RYAN, Circuit Judges, and ENSLEN, District Judge.[*]

RYAN, Circuit Judge.

Petitioner appeals the district court's judgment denying him habeas corpus relief. A jury convicted Prather of attempted armed robbery. He now contends that the Kentucky trial court denied him a fair trial because: (1) the judge refused to instruct the jury on the lesser-included offense of attempted second-degree robbery; and (2) the judge refused to instruct the jury on the defense of entrapment. We affirm.

Prather got in touch with John Henon, who happened to be a paid police informant, and asked Henon if he wished to help Prather rob a van which would be carrying about $50,000 of the Executive Inn's money to the bank. Prather had obtained a blueprint of the Inn and formulated a plan for hijacking the van while it was in the parking lot of the Inn. According to the plan, Prather and Henon would jump the guards, drive the van into the country, kill the guards and split the cash. Prather was to perform the robbery and killings, while Henon drove. Henon amended the plan to eliminate killing the guards.

Henon contacted the police who told him to "lay low" and get more information. Henon met with Prather again, and they "cased the joint." Later, Prather obtained a sawed-off shotgun. Henon took the gun to the police, who filed down the firing pin, making the gun inoperable; they also loaded it with blanks. Prather divulged more details of the plan to Henon, who relayed the information to the police. On the morning of the crime, Henon put the gun in the trunk of the car, awoke Prather, and drove him to the Inn. At the Inn, Henon unlocked the trunk and gave the gun to Prather. Prather placed the gun on the floor of the car, unloaded.

Two undercover police officers replaced the drivers of the van; they entered the van, and proceeded towards the bank. However, they left the parking lot early, foiling Prather's original plan. Prather and Henon followed the van, looking for an opportunity to rob it. Another van filled with police officers followed them. Because the police were fearful that Prather may have obtained another gun, when the vehicles stopped for a red light they moved in and arrested Prather. The shotgun was

---

[*] The Honorable Richard A. Enslen, United States District Court for the Western District of Michigan, sitting by designation.

under Prather's feet, on the floor of the car.

At trial, Prather's attorney submitted requested jury instructions on attempted second-degree robbery and entrapment. He argued that the jury instruction on attempted second-degree robbery was necessary because the gun was inoperable and the jury could find Prather was not armed with a *deadly* weapon. The court declined to give either instruction.

Prather was convicted of attempted armed robbery and appealed. The Kentucky Court of Appeals found insufficient evidence to convict, and reversed the trial court's denial of directed verdict. The Court of Appeals concluded that Prather committed no "substantial step" toward commission of the crime. It did not address the jury instruction issues that Prather raises here. The Kentucky Supreme Court reversed the Court of Appeals and affirmed the judgment of the trial court. In the state's appeal to the Kentucky Supreme Court, Prather, as appellee, argued that the Court of Appeals correctly decided that the evidence was insufficient to prove guilt, and then noted that if the Supreme Court should disagree, it should remand to the Court of Appeals for consideration of three other unidentified issues the Court of Appeals failed to address. Prather later argued, in a supplemental brief, that the Supreme Court could not reverse the Court of Appeals' decision because of double jeopardy. The Supreme Court found that the evidence sufficiently established that Prather committed a substantial step toward commission of an armed robbery, and that the double jeopardy argument was meritless.[1]

Prather states in his brief that both jury instruction issues raised here were raised in the Kentucky appellate courts but were not addressed by those courts. The state does not controvert this claim by Prather.

Upon review of Prather's brief before the Kentucky Supreme Court, we find no reference to the issues he now raises.

## I. Exhaustion

Although the state has not raised the issue, we must initially determine whether Prather has exhausted his claims in the state courts. *Parker v. Rose*, 728 F.2d 392, 394 (6th Cir.1984). Although this court has the discretionary power to do so, it ordinarily will not review state court proceedings under a habeas corpus petition unless the defendant has exhausted his claims before the state courts.[2] Ordinarily, the state courts must have had the opportunity to pass on defendant's claims of constitutional violations. 28 U.S.C. § 2254(b); *Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). Defendant exhausts his claim if he has fairly presented the substance of his claim to the highest court in the state. *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1344 (9th Cir. 1984).[3]

We find two potential exhaustion issues: whether Prather fairly presented the substance of his constitutional claim to the state courts, and whether his grounds for asserting that the lesser-included offense jury instructions were necessary, are the same now as they were when he presented them to the state courts.

### A.

The first issue, whether Prather fairly presented the substance of his constitutional claims to the state courts, encompasses two sub-issues. The first of them derives from the fact that Prather never raised either of the jury instruction issues before the Kentucky Supreme Court. The Kentucky Supreme Court stated that Prather properly raised only two issues in defense of the Court of Appeals' judgment:

---

1. Although the parties did not provide the court with copies of the state court briefs, this court may supplement the record when necessary. *Gibson v. Blackburn*, 744 F.2d 403, 405 n. 3 (5th Cir.1984); *Dickerson v. State*, 667 F.2d 1364, 1367 (11th Cir.), *cert. denied*, 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982).

2. *Granberry v. Greer*, 481 U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987).

3. Petitioner has the burden of establishing he exhausted his claims. *Hopkins v. State*, 524 F.2d 473, 474–75 (5th Cir.1975).

insufficiency of the evidence and double jeopardy. Since these are the only issues Prather raised in the brief before the Kentucky Supreme Court, Prather has not exhausted his claims before the state supreme court, and ordinarily we would not, therefore, entertain his habeas petition. Next, even if defendant had raised the jury instruction issues in the state supreme court in order to exhaust those claims, he was required to raise them as constitutional issues, not as issues of state law. At trial, Prather merely argued that the instructions were proper as a matter of state law. Consequently, he did not exhaust his claims. "[T]he habeas petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir.1984). See also *United States v. Fairman,* 707 F.2d 936, 940–41 (7th Cir.1983), where defendant raised his claim in the state court as a state evidence-law question, and the Seventh Circuit held that the federal constitutional violation allegedly caused by the trial court's disposition of the state evidence-law question was not exhausted. *See also Dougan v. Ponte,* 727 F.2d 199 (1st Cir.1984).[4]

### B.

■ The second "exhaustion" issue relates to whether Prather has changed the *grounds* of his claim that the trial court violated his rights by not issuing the lesser-included offense jury instruction. Again, Prather must have raised the claimed constitutional violation in the state courts. At the time of trial, Prather argued that the lesser-included offense jury instruction was proper because the jury could rationally find that he was not armed with a *deadly* weapon because the weapon was inoperable. In his habeas petition, Prather argues that the instruction was necessary because

the jury could find he was not *armed* with a deadly weapon because he never armed himself with the shotgun the morning he attempted the crime. If the difference between these contentions is a difference in legal theory, Prather did not exhaust his claim in the state courts. And if Prather exhausted one of his claims but did not exhaust the other, the court would ordinarily dismiss the whole petition as a "mixed petition." *Haggins v. Warden,* 715 F.2d 1050 (6th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984). But if the difference is merely a variation in the legal theory, rather than a different legal claim, he has exhausted his claim. *Fairman,* 707 F.2d at 940; *Macon v. Lash,* 458 F.2d 942, 948 (7th Cir.1972).

### C.

■ Although the statutes and case law require exhaustion, exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation on the power of the court. *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); *Duckworth,* 454 U.S. at 4, 102 S.Ct. at 19–20; *Schwartzmiller,* 752 F.2d at 1344; *Parker v. Turner,* 626 F.2d 1 (6th Cir.1980). Therefore, this court can ignore the exhaustion requirement, and in its discretion reach the merits of the petitioner's claim. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066; *Granberry,* 481 U.S. at ——, 107 S.Ct. at 1673, 95 L.Ed.2d 119 (1987).

The state attorney general has not addressed the exhaustion issue in this case, and has actually conceded the issue at trial. Several courts have held that when the state fails to raise exhaustion, it has waived it. *Bradburn v. McCotter,* 786 F.2d 627, 629 (5th Cir.1986); *Pennington v. Spears,* 779 F.2d 1505, 1506 (11th Cir.1986); *Praylow v. Martin,* 761 F.2d 179, 182 n. 2 (4th Cir.1985), *cert. denied,* 474 U.S. 1009,

---

**4.** *Cf. Meeks v. Bergen,* 749 F.2d 322, 324–25 (6th Cir.1984), applying a "waiver" analysis where petitioner exhausts state appellate processes without raising the constitutional claims he raised in the habeas petition. *Cf. Engle v. Isaac,* 456 U.S. 107, 128–30, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982); *Leroy v. Marshall,* 757 F.2d

94, 97–98 (6th Cir.1985), *cert. denied,* 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985), requiring a showing of cause and prejudice by a petitioner where petitioner failed to preserve the constitutional issue for state adjudication due to procedural bars.

106 S.Ct. 535, 88 L.Ed.2d 466 (1985); *Walker v. Lockhart,* 763 F.2d 942, 955–56 n. 26 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986). Other courts have noted that the exhaustion requirement is intended to protect the state *courts* from the frustration of needless federal intervention, and therefore the state prosecutor has no right to waive this requirement. These courts have also noted the duty of the federal courts to address the exhaustion requirement sua sponte where the state's attorney refuses to raise the issue. *Granberry v. Mizell,* 780 F.2d 14, 15 (7th Cir 1985), *vacated and remanded,* 481 U.S. ——, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Dickerson v. Walsh,* 750 F.2d 150, 154 (1st Cir.1984); *Bowen v. State,* 698 F.2d 241, 243 (6th Cir.1983); *Naranjo v. Ricketts,* 696 F.2d 83, 86–87 (10th Cir.1982); *Campbell v. Crist,* 647 F.2d 956, 957 (9th Cir.1981); *Trantino v. Hatrack,* 563 F.2d 86, 95 (3d Cir.1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978); *Sostre v. Festa,* 513 F.2d 1313, 1314 n. 1 (2d Cir.), *cert. denied,* 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975); *Needel v. Scafati,* 412 F.2d 761, 766 (1st Cir.), *cert. denied,* 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969).

Nonetheless, where "unique," "rare," or "exceptionally compelling" circumstances create a particular urgency in reviewing the case for the sake of justice, some courts have waived the requirement of their own accord. *See Naranjo,* 696 F.2d at 86; *Trantino,* 563 F.2d at 95; *Sostre,* 513 F.2d at 1314–15.

The Sixth Circuit has held that the court is obligated to review the exhaustion issue sua sponte. *Parker v. Rose,* 728 F.2d 392, 394 (6th Cir.1984). It should be noted that another holding in *Parker*—that exhaustion is a jurisdictional requirement—is clearly incorrect under *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. In *Strickland,* the Supreme Court held that the exhaustion requirement is subject to exceptions, and addressed the constitutional claims despite the failure to exhaust a "mixed petition."

Finally, a month ago, the Supreme Court further clarified *Strickland* by explicitly declaring that courts of appeals have discretion to reach the merits of unexhausted habeas petitions:

"Although there is a strong presumption in favor of requiring the prisoner to pursue his available state remedies, his failure to do so is not an absolute bar to appellate consideration of his claims,"

and

"we ... direct the courts of appeals to exercise discretion in each case to decide whether the administration of justice would be better served by insisting on exhaustion or by reaching the merits of the position forthwith."

481 U.S. at ——, 107 S.Ct. at 1673–74, 95 L.Ed.2d at 123.

█ The state prosecutor conceded the exhaustion issue at the hearing in this case, and apparently desires this court address the substance of the case. This situation is not unusual, given the number of cases in which state prosecutors have attempted to waive the exhaustion requirement. Although under *Parker* and *Bowen,* the state's attorney cannot waive exhaustion, this court can. Because Prather's petition is so plainly meritless, addressing the merits of his claim will be efficient and will not offend federal-state comity. Efficiency includes bringing criminal litigation to a final conclusion. To return this case to the district court for a hearing on exhaustion, possible state post-conviction remedies, and perhaps still another habeas corpus proceeding, would greatly and wastefully expend judicial resources. Even so, if we thought our disposition would negatively impact federal-state comity, we would dismiss for lack of exhaustion. But where, as here, the petition is meritless, the state's attorney concedes the issue of exhaustion, and our disposition will not affect the state court's decision, comity and efficiency are served, not offended. For those reasons, we proceed to address the constitutional issues.

## II. Lesser-Included Offense Instruction

The Kentucky statutes involved provide:

"506.010 Criminal attempt

"(1) A person is guilty of criminal attempt to commit a crime when acting with the kind of culpability otherwise required for commission of the crime, he;

\* \* \* \* \* \*

"(b) Intentionally does or omits to do anything which, under the circumstances as he believes them to be, is a substantial step in a course of conduct planned to culminate in his commission of the crime."

"515.020 Robbery in the first degree

"(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

\* \* \* \* \* \*

"(b) Is armed with a deadly weapon . . . ."

"515.030 Robbery in the second degree

"(1) A person is guilty of robbery in the second degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft."

Prather argues he was denied his constitutional right to a fair trial under the Due Process Clause of the fourteenth amendment. Both parties agree that the refusal to give a lesser-included offense instruction is a constitutional violation only if the petitioner was entitled to the instruction as a matter of state law—that is, that the instruction was "warranted" under state law. *Hopper v. Evans*, 456 U.S. 605, 611–12, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982); *Ferrazza v. Mintzes*, 735 F.2d 967, 968 (6th Cir.1984); *Brewer v. Overberg*, 624 F.2d 51, 52–53 (6th Cir.1980), *cert. denied*, 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810 (1981).

■ As a matter of Kentucky law, a defendant is entitled to a lesser-included offense instruction only if the evidence would permit a jury to reasonably find the defendant guilty of the lesser-included offense but acquit him of the greater offense. *Martin v. Commonwealth*, 571

S.W.2d 613 (Ky.1978); *Combs v. Commonwealth*, 378 S.W.2d 626 (Ky.1964); *Ferguson v. Commonwealth*, 401 S.W.2d 225 (Ky.App.), *cert. denied*, 385 U.S. 938, 87 S.Ct. 302, 17 L.Ed.2d 217 (1966). This meets the "warranting" requirement under *Hopper*. Thus, if a reasonable jury, on the evidence presented, could have convicted Prather of attempted second-degree (unarmed) robbery and acquitted him of the attempted first-degree (armed) robbery charge, then Prather's constitutional rights were violated when the trial court refused to give the lesser-included offense instruction and the habeas writ should issue.

■ At trial, Prather claimed entitlement to the attempted second-degree robbery instruction because the gun was inoperable and therefore not a deadly weapon under Ky.Rev.Stats. 515.020. The case law clearly holds otherwise. First, even under Ky. Rev.Stats. 515.020, an inoperable weapon is a deadly weapon if defendant intends to convince the victim it is deadly. *Kennedy v. Commonwealth*, 544 S.W.2d 219 (Ky. 1976), held that a pistol with a broken firing pin and no ammunition was a deadly weapon. *Merrit v. Commonwealth*, 386 S.W.2d 727 (Ky.1965), held that a toy gun was a deadly weapon. Second, the jury convicted Prather of *attempted* armed robbery; therefore, because he had intended to commit the crime and, "under the circumstances as he believed them to be," he took substantial steps in a course of conduct he planned would culminate in commission of the crime, the fact that the police rendered the gun inoperable by filing off the firing pin *cannot* negate the "armed with a deadly weapon" element of the crime. Prather attempted to arm himself with a deadly weapon to commit the robbery; therefore, under the circumstances as he believed them to be, arming himself with a faulty weapon was, nevertheless, a substantial step towards commission of armed robbery. The fact the weapon was inoperable could not constitute a ground for acquitting Prather of attempted first-degree robbery *and* convicting him of attempted second-degree robbery.

In this habeas appeal, Prather now claims entitlement to the second-degree robbery instruction because the evidence created a reasonable doubt as to whether he was *armed* with a deadly weapon. He contends that after he brought the gun home several days before the robbery attempt, Henon had exclusive possession and control of the gun. On the day of the robbery attempt, Henon, not Prather, took the gun out of the trunk. Henon then threw the gun into Prather's lap. Prather immediately put the gun, unloaded, on the floor of the car. Prather claims a reasonable jury could seize upon this evidence and entertain a reasonable doubt whether Prather was armed.

■■■ There are two problems with this contention: first, these are not the grounds upon which Prather relied in the trial court. Prather's constitutional rights were not violated if the trial court correctly declined to give the instruction. As we have said, the trial court correctly determined that Prather was not entitled to the instruction on the grounds he submitted; that the gun was not a deadly weapon. Therefore, Prather's constitutional rights were not violated—even if his new contentions are correct. Second, regardless of who controlled the gun, Prather intended to rob the van with a deadly weapon and took substantial steps to that end. Whether he was armed with the deadly weapon at the moment the police arrested him is not controlling. Prather had drawn, and was in the process of carrying out, a plan whereby he was to use the weapon to rob the van. Whether or not he was armed at the moment of arrest would not justify a jury in finding Prather intended to rob the van without the use of a weapon. Thus, this fact would not justify the jury acquitting Prather of first-degree robbery, and convicting him of second-degree robbery. The evidence upon which he relies cannot negate the "armed with a deadly weapon" element of *attempted* first-degree robbery.

What Prather really shows with this evidence is not that he intended to rob the van without the gun, which is what he must show in order to prove entitlement to the lesser-included offense instruction, but that he did not intend to rob the van and had not taken "substantial steps" towards completion of the crime. The fact that he put the gun on the floor and did not load it goes to whether he was really going to rob the van at all. This argument, showing he had no intent to rob the van and took no steps to that end, goes to the sufficiency of the evidence, not the claimed constitutional violation, and therefore is not properly before the court.

The evidence shows that Prather intended to rob the van armed with the shotgun—if at all. No evidence showed he intended to rob the van unarmed. Therefore, there was no evidence which would entitle the jury to convict him of attempted second-degree robbery, and acquit of attempted first-degree robbery. Therefore, he was not entitled to the lesser-included offense instruction, his constitutional rights were not violated, and the writ should not issue.

### III. Entrapment

Prather also claims entitlement to an instruction on entrapment. Assuming that an improper denial of this instruction constitutes a violation of Prather's due process right to a fair trial and not merely an unreviewable error of state law, Prather must prove that a reasonable jury could have concluded from the evidence that the government entrapped him.

Ky.Rev.Stats. 505.010 provides:
"Entrapment

"(1) A person is not guilty of an offense arising out of proscribed conduct when:

"(a) He was induced or encouraged to engage in that conduct by a public servant or by a person acting in cooperation with a public servant seeking to obtain evidence against him for the purpose of criminal prosecution; *and*

"(b) At the time of the inducement or encouragement, he was not otherwise disposed to engage in such conduct.

"(2) The relief afforded by subsection (1) is unavailable when:

"(a) The public servant or the person acting in cooperation with a public servant merely affords the defendant an opportunity to commit an offense...." (Emphasis added.)

Prather points to the following facts to establish entrapment:

"First, he [Henon] awakened Prather in Louisville around 6:30 a.m. on the morning of the alleged attempt. Then, in Owensboro it was he [Henon] who got out of the car and retrieved the weapon from the trunk. As the time approached and then arrived for Prather to attempt the robbery, it is important to note that he did *not* act. It was Henon who acted. Henon positioned the car closer to the van in the parking lot. Henon retrieved the weapon from the trunk while Prather sat immobile. Henon followed the van after it left the parking lot."

■ The state argues both that Henon merely facilitated, but did not "encourage" Prather's conduct, and that Prather was predisposed to commit the crime. We are satisfied that, on the evidence presented, a rational jury could find Henon encouraged Prather.

Assuming the government, acting through Henon, encouraged Prather to commit the crime, the question becomes whether Prather was otherwise predisposed to engage in the conduct. Thus, criminality depends on whether the criminal intent originated in Henon or in Prather. *Sebastian v. Commonwealth*, 585 S.W.2d 440, 441 (Ky.App.1979). Prather originally devised the whole plan—at no point did the role of "deviser" change. Prather argues that "nearly all the steps which constitute a 'substantial step,' ... were taken by Henon and not by Prather." But that goes to the sufficiency of the evidence, not in whom the criminal intent originated. Prather does not dispute that he formulated the plan, obtained the blueprints to the Inn, and asked Henon to join him. Rather, he contends that on the day of the robbery he was no longer disposed to commit the crime. But the evidence does not show that Prather had an innocent disposition; it shows, very clearly, that he

planned the crime, recruited an accomplice, and intended to rob the drivers of the Inn van. The disposition to commit the crime arose in Prather. Therefore, he was not entitled to an entrapment defense, his constitutional rights were not violated, and the writ should not issue.

We affirm the decision of the district court.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in the judgment, and in Parts II and III of the opinion. As far as Part I is concerned, I agree that it would be appropriate for us to waive the exhaustion requirement if the remedies available in the courts of Kentucky were not exhausted. It appears to me that Mr. Prather probably did exhaust his state remedies, but I do not believe this is a question we are required to decide.

The record before us includes a copy of the brief Mr. Prather filed in the Kentucky Court of Appeals. The first two issues raised in that brief were the same jury instruction issues presented in this habeas corpus proceeding. The alleged instructional error was claimed to violate Mr. Prather's constitutional due process rights, and a number of federal decisions were cited in support of that proposition.

Finessing the jury instruction issues, the Kentucky Court of Appeals decided that the trial court had erred in denying Mr. Prather's motion for a directed verdict. The Commonwealth appealed to the Kentucky Supreme Court, arguing that the trial court was correct in allowing the case to go to the jury. Most of Mr. Prather's brief in the Supreme Court was devoted to an effort to refute the Commonwealth's argument and defend the decision of the Court of Appeals. In the concluding section of his brief, however, Mr. Prather pointed out that he had raised four separate issues in the Court of Appeals, and he noted that the Court of Appeals had "reversed on the issue of insufficiency of the evidence [and] did not address the other three issues in any way." Mr. Prather's brief requested the Kentucky Supreme Court to remand

the case to the Court of Appeals for consideration of the other issues—including the jury instruction issues with which we are concerned here—should the Supreme Court decide to reverse on the sufficiency of the evidence question. Mr. Prather's suggestion was not adopted.

With that history, I would be reluctant to conclude that Mr. Prather failed to exhaust his state remedies. Given our decision to address the merits as a matter of discretion, however, it is not essential to decide whether the exhaustion requirement was, in fact, satisfied.