Richard TOLBERT, Plaintiff,

v.

Robert LeCUREAUX, Defendant.

Civ. A. No. 92–CV–75557–DT.

United States District Court,
E.D. Michigan, S.D.

Feb. 2, 1993.

Richard Tolbert, in pro per.

John D. O'Hair, Pros. Atty. County of Wayne by Olga Agnello, Asst. Pros. Atty., Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Petitioner, Richard Tolbert ("Petitioner"), presently confined at the Hiawatha Correctional Facility in Kincheloe, Michigan, has filed this *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, Petitioner attacks his 1989 convictions for receiving and concealing stolen property valued over $100.00, M.C.L. § 750.535, and for being a fourth · felony habitual offender, M.C.L. § 769.12. Petitioner was sentenced to three to five years on the receiving and concealing stolen property offense. That sentence was vacated and an increased sentence of seven and a half to fifteen years was imposed after Petitioner pleaded guilty to being a habitual offender.

## I.  ISSUES PRESENTED

Petitioner presents the following issues for federal habeas review:

1) Inadequate notice of the habitual offender charge.

2) Petitioner did not knowingly and intelligently waive his right to trial before a jury of twelve persons.[1]

3) Petitioner was deprived of due process by the admission of prior bad acts testimony.

4) Petitioner was denied a fair trial by prosecutorial references to his incarceration.

5) Petitioner's constitutional rights were violated when the trial judge participated in sentencing negotiations.

Respondent asserts that although Petitioner presented the same issues to both Michigan appellate courts in his unsuccessful state appeals, he presented these issues in the state courts as issues of state law only and, therefore, has failed to exhaust his state court remedies. Respondent's Answer at 2–4.

## II.  ANALYSIS

### A.  NOTICE OF THE HABITUAL OFFENDER CHARGE

In the Michigan courts petitioner presented his claim that he received inadequate notice of the habitual offender charge as a matter of state law only. See Appellant's Brief on Appeal at 8–10.

However, "the doctrines of exhaustion and procedural default raise only federal-state comity concerns and are not a jurisdictional limitation of the power of the court." *Cain v. Redman,* 947 F.2d 817, 820 (6th Cir.1991). Where an unexhausted federal constitutional claim is plainly meritless, it does not offend federal-state comity to consider such a claim without requiring a meaningless exercise in state court exhaustion. Petitioner's claim that he received inadequate notice of the habitual offender charge is without merit as a federal constitutional · claim. Therefore, although Petitioner has not exhausted his habitual offender notice claim as a federal constitutional issue, this Court shall exercise its discretion to address the merits of this claim.

Petitioner contends that he received insufficient notice of the habitual offender charges. Petitioner relies on *Oyler. v. Boles,* 368 U.S. 448, 452, 82 S.Ct. 501, 503, 7 L.Ed.2d 446 (1962), for the general principle that "a defendant must receive reason-

---

1.  Petitioner states this issue as "Petitioner's consent to an unanimous jury verdict failed to meet applicable standards for waiver of a constitutional right to a fair trial." Petitioner's Brief at fourth page. Petitioner repeatedly refers in his brief to the right to a unanimous jury verdict in a criminal trial. However, these references to jury unanimity are irrelevant and potentially misleading. There is no evidence whatsoever in the record that the verdict in Petitioner's trial was not unanimous.

able notice and an opportunity to be heard relative to the recidivist charge...." However, Petitioner's reliance on *Oyler* is misplaced. The *Oyler* court held that "due process does not require that notice be given prior to the trial on the substantive offense," *Oyler v. Boles*, 368 U.S. at 452, 82 S.Ct. at 504, and upheld the constitutionality of a West Virginia statute that provided notice of the habitual offender charge *"after conviction* on the substantive offense *but before sentencing." Oyler v. Boles*, 368 U.S. at 453, 82 S.Ct. at 504 (emphasis added).

Habitual offender charges were formally filed against Petitioner no later than on December 9, 1988, or December 6, 1988. See Petitioner's Brief at 1; and Respondent's Ex. A, Miscellaneous Docket Entry dated December 6, 1988, stating "arraigned on habitual 4th offender."

The Michigan Court of Appeals found that "the supplemental information charging defendant with being an habitual offender was filed on November 1, 1988, the same day defendant was arraigned in circuit court on the underlying felony." *People v. Tolbert*, Mich.Ct.App. No. 117421 (June 12, 1991) *(per curiam)* at 1. There is support in the record for this factual finding. See Respondent's Ex. B, copy of the Supplemental Information dated November 1, 1988 and Respondent's Ex. C, copy of the docket in Recorder's Court No. 88012494, which states that Petitioner was arraigned on the supplemental information on 11/01/88.[2]

However, there is also some support in the record for Petitioner's allegation that he was arraigned on the habitual offender

information in December of 1988. This Court has not been provided with a transcript of the proceeding in which Petitioner was formally informed of the habitual offender charge.

Because the record is somewhat ambiguous, for purposes of this opinion, this Court shall assume without deciding, that Petitioner was formally informed of the habitual offender charge on December 9, 1988. Petitioner's jury trial on the substantive offense began on February 6, 1989, almost two months later. Trial Transcript, Volume I (Tr. I) at 1. It is obvious that Petitioner received notice of the habitual offender charge against him substantially before he was tried and convicted of the underlying felony. Petitioner did not plead guilty to the habitual offender charge until March 1, 1989. Tr. IV at 597.

Petitioner received reasonable notice of the habitual offender charge. He had a meaningful opportunity to defend against the charge. This Court concludes that Petitioner received constitutionally adequate notice of the habitual offender charge against him under the standard established by *Oyler v. Boles*.[3]

■ "Under 28 U.S.C. § 2241, a writ of habeas corpus disturbing a state-court judgment may issue only if it is found that a prisoner is in custody 'in violation of the Constitution or laws or treaties of the United States.' 28 U.S.C. § 2241(c)(3). A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). Therefore,

---

2. In fact, it appears that Petitioner received actual notice that a habitual offender charge would be filed against him on October 18, 1988, at his preliminary examination. After the judge ruled that there was probable cause to try Petitioner on the substantive offense, the prosecutor stated the following on the record: "It is my intention to file habitual criminal [sic] in this particular charge. I'm very familiar with Mr. Tolbert. I had occasion to convict him in 1987. And he got three to five. He didn't last in jail very long. He's out. This all happened while he was on parole. He has a considerable record. Goes back a long time. There is a parole hold on him, and he probably won't get out. But I can't count on a parole hold, your Honor.

I never know what they're doing with these things.

And I can tell the Court that I will be filing an habitual criminal." [sic] Tr. of October 18, 1988, (Preliminary Examination) at 87.

3. Four Justices dissented in *Oyler v. Boles:* Chief Justice Warren, Justice Douglas, Justice Black, and Justice Brennan. But the dissent spoke approvingly of the *9 day advance notice deemed adequate by the Tenth Circuit* in a different case. *Oyler v. Boles*, 368 U.S. at 462, 82 S.Ct. at 509. This was, of course, far less than the notice Petitioner received in the case at bar.

Petitioner's claim that he received inadequate notice of the habitual offender charge under Michigan state law does not state a claim which is cognizable in federal habeas corpus.

Furthermore, Petitioner pleaded guilty to the habitual offender charge. Petitioner has submitted no argument or authority which would persuade this Court that this guilty plea does not bar habeas review of any claim of inadequate notice of the habitual offender charge. *Tollett v. Henderson*, 411 U.S. 258, 266–67, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

It is clear that Petitioner's claim that he received inadequate notice of the habitual offender charge is "plainly meritless." *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir.1987). Because this issue "is so plainly meritless, addressing the merits of [t]his claim will be efficient and will not offend federal-state comity." *Prather v. Rees*, 822 F.2d at 1422. It would be an exercise in futility and a waste of judicial resources to require that Petitioner present his habitual offender charge notice claim to the state courts as a federal constitutional issue.

## B. KNOWING AND INTELLIGENT WAIVER OF THE RIGHT TO A TWELVE PERSON JURY

Petitioner's trial began with a panel of twelve jurors. There were no alternate jurors on the jury. *People v. Tolbert*, Mich.Ct.App. No. 117421 at 4, n. 1. Petitioner's jury was reduced to nine jurors by the time deliberations began.

One juror was dismissed because a defense witness was her third or fourth cousin. Initially the prosecution moved to dismiss this juror. However, Petitioner agreed that this juror should not remain on the jury. The following day a juror asked to be excused. to attend a funeral. The prosecution was reluctant to agree, but defense counsel indicated he would not object to excusing the juror and continuing the trial with ten jurors. Petitioner stated on the record that he wanted to agree to continuing with ten jurors after being informed that he did not have to agree. The

next day a juror did not appear when the trial was scheduled to resume. After waiting about an hour, the prosecution and defense agreed to continue the trial with only nine jurors. Again, Petitioner stated on the record that he agreed to continue the trial with nine jurors and accept the verdict of the nine person jury. *People v. Tolbert*, Mich.Ct.App. No. 117421 at 2–3.

■ Petitioner raised the jury size issue as a matter of Michigan state law before the Michigan appellate courts. This is unsurprising, because there is no federal constitutional right to a twelve person jury in a criminal case. *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). In *Williams*, the United States Supreme Court ruled that Florida's six person jury used in non-capital criminal cases "did not violate petitioner's Sixth Amendment rights as applied to the States through the Fourteenth." *Williams v. Florida*, 399 U.S. at 86, 90 S.Ct. at 1898.

A non-unanimous verdict by a jury of nine jurors might violate a criminal defendant's rights under the Sixth Amendment. *Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (convictions by 11–1 and 10–2 votes by twelve person juries did not violate the Sixth Amendment); *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979) (conviction by a 5–1 vote of a six person jury does violate the Sixth Amendment; no discussion of whether a non-unanimous verdict by a jury of less than twelve, but more than six jurors, would violate the Sixth Amendment). However, despite Petitioner's references to jury unanimity in the petition before this Court, the record clearly reveals that Petitioner's jury voted 9–0 to convict. The jury was polled individually and each juror stated affirmatively that he or she had voted to convict Petitioner of possession of a stolen motor vehicle over $100.00 in value. Tr. IV at 584–86. Consequently, no issue of a non-unanimous verdict by a jury of less than twelve persons is presented in the case at bar.

■ The Michigan Constitution guarantees defendants in felony criminal trials the

right to trial by a twelve person jury. Mich. Const.1963, art. 1, § 20. However, State constitutional provisions do not establish federal constitutional rights; they establish rights under state law only. *Buchalter v. New York*, 319 U.S. 427, 429, 63 S.Ct. 1129, 1130, 87 L.Ed. 1492 (1943); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984). Therefore, Petitioner's claim that his trial by a nine person jury violated Michigan's constitutional guarantee of trial by a twelve person jury does not state a claim which is cognizable in federal habeas corpus.[4]

■ "[S]tate claims included in a federal habeas petition and having no [federal] constitutional relevance should not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal Constitution." *Hall v. Iowa*, 705 F.2d 283, 287 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983). Consequently, presentation of this State constitutional issue in this petition does not require dismissal of the petition.

## C. CHALLENGED ADMISSION OF EVIDENCE

Petitioner claims that he was denied a fair trial when the trial judge allowed admission of testimony regarding items which had been seized from his home about two years before his arrest for the receiving and concealing stolen property charge at issue in the present petition. Photos of the items were also admitted. The property Petitioner was charged with receiving and concealing in the present case was a 1988 Subaru with an approximate retail value of $12,000.00. Tr. I at 95. Petitioner was arrested on the charge he attacks in the present petition on October 5, 1988.

In October of 1986 police raided Petitioner's home and found a variety of items including "hundreds of Secretary of State forms, car dealership paperwork, several VIN plates, and other related articles." *People v. Tolbert*, Mich.Ct.App. No. 117421 at 3. The related articles included hundreds of sets of new car keys and key code numbers allowing a match to be made between a particular key and a particular car.

Petitioner maintained in the Michigan appellate courts that the admission of this material and testimony violated Michigan evidentiary law because it was evidence of prior crimes or bad acts whose admission was barred by MRE 404(b), *People v. Golochowicz*, 413 Mich. 298, 319 N.W.2d 518 (1982), and other Michigan case law.

The Michigan Court of Appeals rejected Petitioner's claim, stating that:

This evidence was relevant to the charge of possession of a stolen vehicle with intent to fraudulently procure or pass title, because it tended to show that defendant had both the means and knowledge to commit this offense. We find no abuse of discretion in admitting the evidence. Moreover, because the testimony concerned items that were found, rather than describing other crimes, wrongs, or acts of the defendant, we agree with the trial court that MRE 404(b) is not applicable."

*People v. Tolbert*, Mich.Ct.App. No. 117421 at 3.

■ Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims cognizable in a habeas petition unless the error

---

4. Furthermore, a defendant may waive his right to trial by a twelve person jury. *Attorney General v. Montgomery*, 275 Mich. 504, 537–39, 267 N.W. 550 (1936); *People v. Miller*, 121 Mich.App. 691, 702, 329 N.W.2d 460 (1982), *lv. den.* 417 Mich. 894, 330 N.W.2d 692 (1983). Each time the size of the jury was reduced, Petitioner personally agreed on the record to continue the trial with the lesser number of jurors after being told on the record that he did not have to agree to continue the trial. There is every indication that Petitioner's waiver of his State Constitutional right to a twelve person jury was knowing, intelligent, and voluntary. This Court notes that a criminal defendant has the right to *a* trial by a jury of his peers. A criminal defendant does not have a right to *two* trials by juries of his peers. Granting a new trial on the basis of jury size to a defendant to who has *personally and voluntarily agreed* to trial by less than twelve jurors—*after* being informed of his right under Michigan law not to be tried by a smaller jury and after receiving a unanimous verdict by a jury of nine persons—would amount to granting that defendant the right to two jury trials.

renders the trial so fundamentally unfair as to deprive the petitioner of federal constitutional rights. *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir.1984), *cert. denied*, 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985); *Cooper v. Sowders*, 837 F.2d 284 (6th Cir.1988).

■ Under Michigan law, prior bad acts, crimes, or wrongs are not admissible to prove "the character of a person in order to show that he acted in conformity therewith." MRE 404(b). Evidence of prior bad acts or wrongs are "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act ... whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b). Petitioner argues that the photos and testimony admitted were evidence of prior bad acts or wrongs, apparently because he had no lawful reason to possess such materials; therefore, he contends that MRE 404(b) should have applied. The Michigan Court of Appeals disagreed and found that MRE 404(b) did not apply because the testimony and items did not relate to prior bad acts, crimes, or wrongs.

This Court does not find that any error, if error there was, by the Michigan courts was so egregious that it rendered Petitioner's trial fundamentally unfair. Furthermore, this Court concludes that if Petitioner was correct that if MRE 404(b) did apply, there would have been no due process violation in admitting the items and testimony as showing "opportunity, intent, preparation, scheme, plan, or system in doing an act." MRE 404(b). Consequently, this Court concludes that admission of the challenged evidence did not deprive Petitioner of due process of law.

## D. PROSECUTORIAL REFERENCES TO PETITIONER'S INCARCERATION

During his questioning of Petitioner's girlfriend, Gina Cunningham, the prosecutor made several references to Petitioner's incarceration while he was awaiting trial. Tr. II at 253, 259–60. The context of these references to Petitioner's incarceration was the prosecutor's impeachment of inconsistent statements Miss Cunningham made about the stolen car. Miss Cunningham was arrested while driving the stolen Subaru. She stated to police and at Petitioner's preliminary examination that Petitioner had given her the car as a gift. Later, at Petitioner's trial, she testified that a Eugene Thomas had given her the car and arranged to obtain fraudulent papers for the car. She further testified that she never saw Mr. Thomas again after he gave her the red 1988 Subaru as a gift. In the course of a sixty-nine page direct examination, the prosecutor made two or three references to the fact that Petitioner was in jail for driving the car, while asking Miss Cunningham if she had told Eugene Thomas about Petitioner's plight. Tr. II at 201–260.

The prosecutor also asked Miss Cunningham when was the last time she saw Petitioner before the trial. She replied, "[v]isiting day." Tr. II at 198. The prosecutor then asked if she and Petitioner had discussed her imminent testimony during that visit. Tr. II at 198. She replied that they had not.

■ Petitioner claims that the prosecutor's conduct denied petitioner his fourteenth amendment right to a fair trial.[5]

■ On habeas review, the standard that must be applied when analyzing claims of prosecutorial misconduct is whether the conduct was "so egregious so as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir.) *cert. denied*, 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979). The Court must assess the prosecutor's alleged statements in the context of the evidence

---

**5.** Petitioner's appellate attorney relied upon Michigan case law to support this prosecutorial misconduct claim. Many of the Michigan cases cited related federal constitutional analysis. Furthermore, assertion of this claim of prosecutorial misconduct was sufficiently detailed so as to call to mind a specific right protected by the federal Constitution. Therefore, this claim was exhausted as a federal constitutional claim in the state courts.

offered against the petitioner at trial and decide whether the statements "could have tipped the scales in favor of the prosecution." *Robison v. Maynard,* 829 F.2d 1501, 1509 (10th Cir.1987). The Court must consider the extent to which claimed misconduct tended to mislead the jury or prejudice the petitioner and whether the claimed misconduct was deliberate or accidental. The Court must look to whether the remarks were isolated or extensive. Moreover, instances of misconduct are to be viewed in light of the strength of the competent proofs to prove guilt. *Angel v. Overberg,* 682 F.2d 605, 608 (6th Cir.1982). In deciding whether prosecutorial misconduct mandates reversal, the harmless error standard is to be applied. *See generally Eberhardt v. Bordenkircher,* 605 F.2d 275 (6th Cir.1979).

■ Analyzing the very minor potential effect of the prosecutor's references to Petitioner's incarceration while awaiting trial in relation to the competent evidence admitted against Petitioner—not the least of which was Miss Cunningham's testimony— this Court concludes that the prosecutor's references to Petitioner's incarceration as a pre-trial detainee did not render Petitioner's trial fundamentally unfair or deprive Petitioner of due process of law. There is no claim made that the prosecutor's remarks in any way suggested that Petitioner was incarcerated for a prior conviction; fleeting, context-setting references to pre-trial detention is all that is at issue.

Furthermore, this Court is confident that any error involved in the making of these remarks was harmless. Miss Cunningham was utterly useless to Petitioner as a witness. The prosecutor impeached her thoroughly and convincingly with her several prior inconsistent statements. The prosecutor forced her to admit in detail that she had stated several times before—including while under oath—that Petitioner, her acknowledged long time boyfriend, had given her the then nearly new Subaru. Miss Cunningham then testified at Petitioner's trial and for the first time stated that the mysterious Mr. Thomas had given her the

car, only to vanish from her life without a trace. Tr. II at 191–298, 225.

This Court also notes that Petitioner's trial counsel never objected to the remarks concerning Petitioner's detainee status, or asked for a limiting instruction concerning the remarks. This further weakens, if that is possible, Petitioner's already meritless claim that these remarks deprived him of due process.

Miss Cunningham's testimony that Mr. Thomas had given her the Subaru was unbelievable. Her credibility as a witness was reduced to nothing by the prosecutor's impeachment. This Court is confident that this impression of Miss Cunningham—not any negative impressions about Petitioner because of a few references to his pre-trial incarceration—is what would have made a lasting impact on the jury from Miss Cunningham's examination by the prosecutor. Any error made the prosecutor's references to Petitioner's pre-trial place of residence was harmless.

### E. PARTICIPATION OF THE TRIAL JUDGE IN SENTENCE NEGOTIATIONS

■ Petitioner claims that the trial judge entered into improper sentence negotiations which entitle Petitioner to habeas relief. In his Michigan state appeals, Petitioner cited both Michigan cases and federal case law suggesting that a guilty plea induced by a judge's participation in plea and sentence negotiations *before* the defendant pleads guilty may be involuntary, because of the judge's great power as the authority who ultimately will sentence the defendant. *See, e.g., United States v. Werker,* 535 F.2d 198, 204–05 (2d Cir.1976); *People v. Killebrew,* 416 Mich. 189, 201–06, 330 N.W.2d 834 (1982). Judicial affirmation of an involuntary guilty plea would violate the federal constitution. Therefore, this Court concludes that Petitioner has exhausted this issue as a federal constitutional issue.

■ The trial judge's alleged participation in "sentence negotiations" occurred at Petitioner's invitation *after* Petitioner had already pleaded guilty. Consequently,

all of the cases Petitioner has cited have no application to the case at bar and Petitioner's claim is without merit.

At Petitioner's sentencing proceeding, the prosecutor mentioned during his pre-sentencing remarks that a car worth about $9,000.00 had been destroyed as a result of Petitioner's crime. After defense counsel concluded his pre-sentencing remarks, the judge asked Petitioner if he wanted to say anything before the judge imposed sentence. Petitioner, on his own initiative—without any questioning or prompting by the prosecutor, the trial judge, or by defense counsel—stated that "it's not true that the property's been destroyed." Tr. IV at 620.

The judge then asked Petitioner if he knew where the car was. Petitioner replied, "[i]f I had the opportunity, take a couple of days, everything would be fine. He just didn't—the opportunity just didn't come to me right." Tr. IV at 620. Petitioner then asked the judge "if it'll make a difference." Tr. IV at 621. The judge replied that "[i]t makes a difference, it makes a big difference to me." Tr. IV at 621.

Petitioner's *sentencing* was adjourned. Petitioner had already pleaded guilty after being fully informed of his constitutional rights. Arrangements were made for Petitioner to inform defense counsel of the car's whereabouts. Defense counsel was to then inform the prosecutor who would obtain police assistance to recover the car. This was accomplished and the car was recovered.

The trial judge commended Petitioner for coming forward with the information which lead to the car's recovery. Moreover, the trial judge explained just what Petitioner had accomplished for himself by coming forward and helping recover the car. The judge explained his sentence as follows:

> Well, the first immediate thing that you saved yourself, Mr. Tolbert, was $8,500.00 in restitution which the Court was going to impose as a condition of parole, and that is now deleted.
>
> Secondly, you've saved yourself some time. As I indicated at that time, I had already written it out. I don't make up my mind before I hear from all parties, but clearly I study pre-sentence reports. I generally spend what other judges regard as too long a time pouring [sic] over them, but I had my notes all prepared and I was prepared to give you a sentence of 10 to 20 years, which interestingly enough was exactly what Mr. Bianco's recommendation was before he got started. And you have saved yourself some time. That's real time when you're talking about an habitual offender.
>
> I really think that the turning over of the car indicates to me that there may be some change for you, Mr. Tolbert, yet, and I'm happy to see that that step was taken at least.
>
> It is the sentence of the Court that the Defendant be committed to the custody of the Correction's Commission and placed in that custody at the State Prison of Southern Michigan to serve a minimum term of not less than seven and a half years and a maximum term of not more than 15 years on the habitual count.

Tr. IV at 625–26.

Thus, it is clear from the record that, by assisting in the recovery of the car, Petitioner was given a substantial benefit by the sentencing judge. Petitioner was relieved of the burden of a substantial restitution order. Moreover, Petitioner's minimum sentence was reduced by two and a half years and his maximum sentence was reduced by five years.

Petitioner's argument that the trial judge improperly participated in "sentencing negotiations" is ludicrous. There were no "sentencing negotiations." Petitioner had already pleaded guilty *before* he took the initiative to tell the judge the Subaru could be recovered. Tr. IV at 597–607. Petitioner's guilty plea was not based on any sentencing promise or bargain which involved the sentencing judge. When the judge asked Petitioner if he wanted to say anything before he was sentenced, Petitioner took the initiative to inform the court that the stolen car could be recovered. Sentencing was adjourned and the car was, in fact,

recovered. The sentencing judge then sentenced Petitioner to a shorter sentence than he would have if Petitioner had not helped recover the car.

Both the minimum and maximum terms of Petitioner's 7 & ½ to 15 year term are 25% shorter than the 10 to 20 year term he would have received if he had not helped recover the car. Petitioner also avoided a sizable restitution order. The sentencing judge acted no more improperly than if he had imposed a sentence which was 25% shorter than the sentence he had initially planned for a defendant who first pleaded guilty and before sentencing was able to document that he was suffering from a severe disease which shortened his life expectancy.

Petitioner had already pleaded guilty to being a habitual offender before he took the initiative to tell the sentencing judge that recovery of the stolen car was possible. No promises were made to Petitioner before he pleaded guilty. No specific promises were made after Petitioner raised the possibility of recovering the car, although the judge did state that recovery of the car "makes a difference, it makes a big difference to me." Tr. IV at 621. Petitioner was given a lesser sentence than he would have otherwise have received for assisting in the recovery of a vehicle which he was convicted of stealing. His claim that the sentencing judge's pragmatic display of mercy entitles him to habeas relief is plainly meritless.

Accordingly,

IT IS ORDERED that the petition for writ of habeas corpus is DENIED.