William CAIN, Petitioner,

v.

Robert REDMAN, Respondent.

Nos. 4:89–cv–71, 4:89–cv–89.

United States District Court,
W.D. Michigan, S.D.

Dec. 4, 1990.

---

William Cain, Coldwater, Mich., pro se.

James L. Stopkai, Asst. Atty. Gen., Appellate Div., Habeas Corpus Section, Lansing, Mich., for respondent.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

ROBERT HOLMES BELL, District Judge.

Magistrate Joseph G. Scoville filed a Report and Recommendation on November 8, 1990 in which he recommended petitioner's habeas corpus matter be dismissed on its merits. Petitioner's objections to this Report and Recommendation have been received and thoroughly reviewed by this Court which must nevertheless adopt the Magistrate's findings.

Petitioner's challenged jury instructions resulting in his 1971 murder convictions are nearly identical to those found unconstitutional in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) as improperly depriving defendant of due process through a presumption which relieves the prosecution of the burden of proving every element of a criminal offense beyond a reasonable doubt. The issue of *Sandstrom*'s retroactive application is governed by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), in which it was held that unless the new ruling fits within a few narrowly fashioned exceptions retroactivity won't apply to new Constitutional commands.

While this Court is satisfied that *Sandstrom* represents a new Constitutional rule, it finds the rule was not in existence at the time of petitioner's conviction. *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir.1990). It further finds that the *Sandstrom* rule doesn't fall within the narrow exceptions of retroactivity set forth in *Teague*. The *Sandstrom* rule doesn't place "certain kinds of primary, private individual conduct beyond the power of the criminal law making authority to proscribe", nor does it require the observance of "those procedures that ... are implicit in the concept of ordeal liberty". This later category is clearly resumed for "watershed rules of criminal procedure". *Saffle v. Parks*, — U.S. —, —, 110 S.Ct. 1257, 1263, 108 L.Ed.2d 415 (1990) and *Sawyer v. Smith*, — U.S. —, —, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990).

Accordingly, this Court adopts the reasoning and conclusion of Magistrate Scoville's Report and Recommendation *in toto*, thereby DISMISSING petitioner's action in these matters.

## MAGISTRATE'S REPORT AND RECOMMENDATION

JOSEPH G. SCOVILLE, United States Magistrate Judge.

These are consolidated habeas corpus actions brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving a life sentence after being convicted of first-degree murder by a jury in the Genesee County Circuit Court in September, 1971. Mich.Comp.Laws § 750.316. Petitioner has submitted two identical habeas petitions, which have been consolidated into one action (Order, docket # 32). These habeas petitions challenge the instructions given to the jury at petitioner's trial. Specifically, petitioner raises a *Sandstrom* error, alleging that the trial court's instructions to the jury improperly shifted the burden of proving the elements of intent and malice to petitioner. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). After considering petitioner's argument, I conclude that recent Supreme Court authority precludes petitioner from raising this claim in a federal habeas corpus petition.

### BACKGROUND

The genesis of this criminal action was the fatal shooting of I.C. Blackman at a bar in Flint, Michigan. Petitioner acknowledged that he fired a gun at the decedent, but argued that it was done in self-defense. The jury nevertheless convicted petitioner of first-degree murder on September 23, 1971. The Michigan Court of Appeals affirmed the conviction on February 27, 1973. The conviction became final on June 12, 1975, when the Michigan Supreme Court denied leave to appeal.

Before their deliberations, the jury received instructions from the judge which, in part, included the following:

The law implies from an unprovoked, unjustifiable or inexcusable killing, the existence of that wicked disposition which the law terms malice aforethought. If a man kills another suddenly without provocation, the law implies malice and the offense is murder.

\*   \*   \*   \*   \*   \*

The instrument with which the killing was done may be taken into consideration, because the intent to kill, in the absence of evidence showing a contrary intent, may be inferred from the use of a deadly weapon in such a manner that the death of the person assaulted would be the inevitable consequence. The law presumes that every person, unless believed by some disability as here and after mentioned, contemplates and intends the natural, ordinary, and usual consequences of his voluntary acts, unless the contrary appears from the evidence. He is presumed to do this.

(Trial Transcript, at 1085–87; docket # 23). Eighteen years after his conviction, petitioner claims that these jury instructions were erroneous and violated his constitutional rights.

In 1979, eight years after petitioner's conviction, the Supreme Court ruled that certain jury instructions establishing presumptions are unconstitutional, as an abridgement of the constitutional principles of presumption of innocence and allocation of burden of proof. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The Court held that such instructions deprive criminal defendants of due process because they are susceptible to an interpretation that relieves the state of the burden of proving every element of a criminal offense beyond a reasonable doubt. *Sandstrom*, 442 U.S. at 514–24, 99 S.Ct. at 2454–59. In his habeas actions, petitioner attempts to challenge the instructions at his trial under *Sandstrom*. However, *Sandstrom* was decided four years after petitioner's conviction became final. Petitioner now seeks to apply *Sandstrom* retroactively to his 1971 conviction.

The Supreme Court has recently broken new ground in the area of retroactive application of law raised in habeas corpus actions. In light of the recent pronouncements by the Supreme Court in this area, I conclude that *Sandstrom* cannot be applied retroactively to petitioner's case and that the petitions should be dismissed on their merits.

## DISCUSSION

In 1989, the Supreme Court decided two landmark cases concerning the retroactive application of new rules of law on collateral review of state convictions. The first was *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), decided by a plurality of the Court. The second case was *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), in which a majority of the Court embraced the plurality view.

The "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Teague*, 489 U.S. at 309, 109 S.Ct. at 1074. Moreover, the state courts "are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court discover, during a habeas proceeding, new constitutional commands." *Id.* at 310, 109 S.Ct. at 1075 (quoting *Engle v. Isaac*, 456 U.S. 107, 128 n. 33, 102 S.Ct. 1558, 1572 n. 33, 71 L.Ed.2d 783 (1982)). With this background, the plurality in *Teague* held: "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* 489 U.S. at 310, 109 S.Ct. at 1075. In *Penry*, Justice White, who had concurred only in the judgment of *Teague*, became the fifth member of the court to adopt the *Teague* retroactivity analysis, thus giving the *Teague* rule majority support of the Court. *Penry*, 109 S.Ct. at 2940, 2944; *accord, Saffle v.*

*Parks,* ——— U.S. ———, 110 S.Ct. 1257, 1258–59, 108 L.Ed.2d 415 (1990) (in both capital and noncapital cases, new rule of constitutional law not applied in cases on collateral review unless the rule comes within one of two narrow exceptions).

Under the *Teague/Penry* analysis, the court must consider two issues in reviewing the instant case: (1) Does *Sandstrom* represent a "new" rule? (2) If so, does this new rule fall into one of the two exceptions identified by the Supreme Court? As explained below, I conclude that *Sandstrom* represents a new rule within the meaning of *Teague, Penry,* and their progeny and that *Sandstrom* error does not fall into either of the exceptions allowing for retroactive application.

### I.

The first issue for consideration is whether *Sandstrom* error constitutes a "new" rule within the meaning of *Teague.* "[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070 (citations omitted). This principle serves to ensure that gradual developments in the law over which reasonable jurists may disagree are not later used to upset the finality of state convictions valid when entered. *Sawyer v. Smith,* ——— U.S. ———, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990). The new rule principle therefore "validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler v. McKellar,* ——— U.S. ———, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990). The Supreme Court has provided further guidance in analyzing whether a rule is new under *Teague* standards by holding that precedents which "inform, or even control or govern" the intervening decision do not keep it from being a new rule if the precedents do not "compel" the decision. *Saffle v. Parks,* 110 S.Ct. at 1261.

Applying this analysis to petitioner's case, *Sandstrom* represents a "new rule" within the meaning of *Teague.* Clearly, no case prior to *Sandstrom* invalidated the type of potential burden-shifting jury instruction given in petitioner's case. *Sandstrom* broke new ground by definitively holding that such instructions may be unconstitutional. At the time of petitioner's conviction, no Supreme Court precedent dictated or compelled the result reached by *Sandstrom* eight years later. In fact, *Sandstrom* was not controlled or governed by any particular precedent, but was the result of an analysis of cases generally dealing with the presumption of innocence and the allocation of the burden of proof, such as *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The only cited decision that may possibly have "compelled" the result in *Sandstrom, United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), post-dated petitioner's conviction. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), also relied upon heavily in *Sandstrom,* involved a question of statutory interpretation and did not purport to enunciate a constitutional rule binding upon the states.

The foregoing considerations have led at least one court of appeals to hold that *Sandstrom* represents a "new rule" under *Teague.* *Prihoda v. McCaughtry,* 910 F.2d 1379, 1382 (7th Cir.1990). I likewise conclude that *Sandstrom* is a new rule under the *Teague* analysis.

### II.

Because *Sandstrom* represents a new rule under *Teague,* petitioner may only apply *Sandstrom* retroactively to his conviction if *Sandstrom* fits into one of two narrow exceptions.

First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Second, a new rule should be applied retroactively if it requires the observance of "those proce-

dures that ... are 'implicit in the concept of ordered liberty.'" *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073 (citations omitted). The *Penry* Court elaborated on the first exception, explaining that "the first exception set forth in *Teague* should be understood to cover not only rules forbidding criminal punishment of certain primary conduct, but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry*, 109 S.Ct. at 2953. This exception is clearly inapplicable to petitioner's case. The *Sandstrom* rule that petitioner seeks to apply retroactively would neither decriminalize a class of conduct nor prohibit the imposition of a certain kind of punishment upon a particular class of persons. Accordingly, if petitioner is able to apply *Sandstrom* retroactively, the *Sandstrom* rule must fit within the second *Teague* exception.

The second *Teague* exception is reserved for "'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." *Sawyer v. Smith*, 110 S.Ct. at 2831 (citing *Saffle*, 110 S.Ct. at 1263; and *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075). Although the precise contours of this exception may be difficult to discern, the Supreme Court has "usually cited *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception." *Saffle*, 110 S.Ct. at 1264. To fit within the second exception, a new rule must do more than improve the accuracy of the trial; it must alter the understanding of the *"bedrock procedural elements* essential to the fairness of a proceeding." *Sawyer*, 110 S.Ct. at 2831. Against these standards, I conclude that *Sandstrom* does not represent one of the "watershed" rules envisioned by *Teague*.

Whatever level of importance is accorded the *Sandstrom* rule, it has none of the "primacy and centrality of the rule adopted in *Gideon*." *See Saffle*, 110 S.Ct. at 1264. Besides the right to counsel, the Supreme Court has enunciated only a few examples, such as the introduction of a coerced confession or adjudication by a biased judge, which approach the watershed of fundamental fairness. *See Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986). The Court itself has acknowledged that it is "unlikely that many such components of basic due process have yet to emerge." *Teague*, 489 U.S. at 313, 109 S.Ct. at 1077. *Sandstrom*, which focuses on the possibility that jurors may single out one sentence in a set of jury instructions and interpret it as shifting the burden of proof onto defendants, does not qualify as a bedrock procedural element essential to the fairness of a proceeding. The jurors were charged more than once that the defendant was presumed innocent and that the state had the burden of proving all elements of the crime beyond a reasonable doubt. Application of *Sandstrom* to the present case, as in most cases, merely assures that no confusion will arise because of instructions that might contradict the general burden of proof instruction. Although the Supreme Court has labelled the doctrine of reasonable doubt as "bedrock, axiomatic and elementary," *see Yates v. Aiken*, 484 U.S. 211, 214, 108 S.Ct. 534, 536, 98 L.Ed.2d 546 (1988), the post-*Teague* court has not accorded this treatment to *Sandstrom* issues.

The Supreme Court's attitude towards *Sandstrom* error in an analogous area is instructive. The Court has determined that some errors are so fundamental that the harmless-error rule can never apply to them, because they necessarily render a trial unfair. For example, "[t]he state of course must provide a trial before an impartial judge, with counsel to help the accused defend against the state's charge. Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Rose*, 478 U.S. at 577–78, 106 S.Ct. at 3106. Such fundamental constitutional errors "require reversal without regard to the evidence in the particular case." *Id.* at 577, 106 S.Ct. at 3105. *Sandstrom* error is not within this narrow category of fundamental errors. The Supreme Court held in

*Rose v. Clark* that an instruction that impermissibly shifted the burden of proof on malice "is not 'so basic to a fair trial' that it can never be harmless." 478 U.S. at 580, 106 S.Ct. at 3107. If the Supreme Court does not consider *Sandstrom* error to be fundamental for harmless-error purposes, it is unlikely that the Court would consider it a watershed of fundamental fairness under *Teague*.[1] I therefore conclude that *Sandstrom* error does not fall into the second exception of *Teague*. See *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir.1990) (*Sandstrom* error is "a new rule for purposes of *Teague* and could not be applied on collateral review").

Petitioner relies on Sixth Circuit decisions predating *Teague* and *Penry*, holding that *Sandstrom* should be applied retroactively. *Merlo v. Bolden*, 801 F.2d 252, 255 n. 1 (6th Cir.1986), *cert. denied*, 480 U.S. 909, 107 S.Ct. 1358, 94 L.Ed.2d 527 (1987); *Burton v. Bergman*, 649 F.2d 428, 431 n. 3 (6th Cir.1981), *vacated*, 456 U.S. 953, 102 S.Ct. 2026, 72 L.Ed.2d 478 (1982). I conclude that these decisions are no longer binding in light of *Teague* and its progeny.

Both *Burton* and *Merlo* find retroactivity on the basis that *Sandstrom* was designed to prevent errors which impair the truth-finding function and raise questions about the accuracy of guilty verdicts. *Merlo*, 801 F.2d at 255 n. 1; *Burton*, 649 F.2d at 431 n. 3. However, this rational is no longer sufficient under *Teague*. The Supreme Court has pointedly determined that a new rule must do more than improve the accuracy of the trial to justify retroactivity. See *Sawyer*, 110 S.Ct. at 2831. In order to fit within the second exception, a rule must be a "watershed" rule of criminal procedure. Neither the Sixth Circuit nor the Supreme Court has ever held that *Sandstrom* error meets this greater test.

The Sixth Circuit also justified retroactive application of *Sandstrom* by observing that the *Sandstrom* rule was merely an application of earlier Supreme Court cases, such as *In re Winship*. *Merlo*, 801 F.2d at 255 n. 1. Again, this analysis does not take into account the factors now relevant under *Teague/Penry*. It is not enough that a rule was suggested or even controlled by previous authority. Unless the rule was "compelled" by previous decisions, it is a new rule and is not entitled to retroactive application on habeas review. *Saffle v. Parks*, 110 S.Ct. at 1261. A reading of the *Sandstrom* opinion demonstrates that the Court's decision there was not "compelled" by anything the Court had ever decided previously.

In summary, because of the intervening decisions of the Supreme Court, I conclude that the Sixth Circuit would no longer consider *Burton* and *Merlo* to be binding precedent.

### III.

Petitioner has correctly identified the jury instructions in his criminal case as raising the issue of *Sandstrom* error. *Sandstrom* was decided after petitioner's conviction became final. Petitioner now seeks to argue in his habeas petitions that *Sandstrom* should be applied retroactively to his conviction. The Supreme Court has definitively stated that unless they fall within an exception to the general rule, new constitutional rules will not be applicable to those cases which have become final before the new rules are announced. On the criteria set forth in *Teague* and its progeny, I find that *Sandstrom* constitutes a new rule under *Teague* and that it does not come within either of the *Teague* exceptions allowing for retroactivity. Accordingly, petitioner cannot rely on *Sandstrom* to attack his conviction. I recommend that the habeas corpus petitions be dismissed on their merits.

---

1. In *Hall v. Kelso*, 892 F.2d 1541, 1543 n. 1 (11th Cir.1990), the Eleventh Circuit held that *Sandstrom* error qualifies under the second *Teague* exception. The court reached that conclusion by applying Justice Harlan's retroactivity standard, which the concurring Justices in *Teague* had applied. In *Sawyer v. Smith*, however, the Court made clear that *Teague* was designed to modify Justice Harlan's standard and to restrict the availability of retroactively applied rules. 110 S.Ct. at 2831. The Eleventh Circuit decision, which predated *Sawyer*, relied upon a now-repudiated legal standard.

 

NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir.1981); *see Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).