**William CAIN, Petitioner–Appellant,**

v.

**Robert REDMAN, Respondent–Appellee.**

**No. 91–1187.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 23, 1991.

Decided Oct. 24, 1991.

---

William Cain, pro se.

Victor L. Bland, Taylor & Walters, Portage, Mich. (argued and briefed), for petitioner-appellant.

James L. Stropkai, Office of Atty. Gen., Habeas Div., Lansing, Mich. (argued and briefed), for respondent-appellee.

Before KENNEDY and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner-appellant, William Cain, appeals the district court's dismissal of his writ of habeas corpus against respondent-appellee, Robert Redman. For the following reasons, we affirm.

I.

Petitioner, William Cain, filed this application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On September 23, 1971, a jury in the Genesee County Circuit Court of Michigan convicted petitioner of first degree murder in the fatal shooting of I.C. Blackman. The trial judge sentenced him to life imprisonment without parole. The Michigan Court of Appeals affirmed the conviction on February 27, 1973, and the Michigan Supreme Court denied leave to appeal on June 12, 1975.

In October 1975, petitioner filed an application for delayed appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application and a subsequent application for leave to appeal to the Michigan Supreme Court was also denied. On December 1, 1977, petitioner first sought a writ of habeas corpus in the United States District Court for the Eastern District of Michigan, which was denied.

In April 1988, petitioner filed a second delayed application for leave to appeal in the Michigan Court of Appeals. During his state trial, petitioner acknowledged that he had fired a gun at Blackman, but argued that it was done in self-defense. However, eyewitnesses testified that petitioner shot Blackman four times in the back. Petitioner argued before the Michigan Court of Appeals that the jury instructions at his trial were unconstitutional under a 1979 Supreme Court decision, *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61

L.Ed.2d 39 (1979), because they contained an invalid presumption.

Before their deliberations, the jury had received instructions from the state court trial judge which included the following:

The law implies from an unprovoked, unjustifiable or inexcusable killing, the existence of that wicked disposition which the law terms malice aforethought. If a man kills another suddenly without provocation, the law implies malice and the offense is murder.

. . . .

The instrument with which the killing was done may be taken into consideration, because the intent to kill, in the absence of evidence showing a contrary intent, may be inferred from the use of a deadly weapon in such a manner that the death of the person assaulted would be the inevitable consequence. The law presumes that every person, unless believed (sic) by some disability as here and after mentioned, contemplates and intends the natural, ordinary, and usual consequences of his voluntary acts, unless the contrary appears from the evidence. He is presumed to do this.

Petitioner alleged that these jury instructions violate his constitutional rights for the following reasons. In 1979, eight years after petitioner's conviction by the state of Michigan, the Supreme Court ruled that a jury instruction that contained a presumption indicating that one intends the consequences of his voluntary actions was unconstitutional, because it abridged the principles of presumption of innocence and allocation of burden of proof. *Sandstrom*, 442 U.S. at 524, 99 S.Ct. at 2459. The Court held that instructions, containing such a presumption, deprive criminal defendants of due process because they are susceptible to an interpretation that relieves the state of the burden of proving every element of a criminal offense, including the element of intent, beyond a reasonable doubt. *Id.* at 514–24, 99 S.Ct. at 2454–59. In his 1988 application for leave to appeal before the Michigan Court of Appeals, petitioner attempted to challenge the jury instructions at his trial pursuant to the Supreme

Court's decision in *Sandstrom*. However, *Sandstrom* was not decided until 1979, four years after petitioner's state conviction became final, and petitioner was therefore seeking to apply *Sandstrom* retroactively.

On February 17, 1989, the Michigan Court of Appeals denied the application for leave to appeal. On April 17, 1989, petitioner sent a letter request to the Michigan Supreme Court, requesting review of the Court of Appeals' denial. However, the request for review was not made within the 56–day period for seeking review required by Michigan Court Rule 7.302(C)(3). On April 27, 1989, the Michigan Supreme Court sent a letter to petitioner, informing him that his letter request was untimely and that return of the letter request was the appropriate remedy. On May 15, 1989, petitioner made a motion for reconsideration to the Supreme Court of Michigan, stating that he had been in a medical unit where there were no law library facilities available to him at the time the request for review was due. Petitioner argued that as soon as he was transferred to an institution where there was a law library, he had immediately sent a request for review to the Michigan Supreme Court. Because the Michigan Supreme Court does not file untimely requests for review, no application for leave to appeal the Court of Appeals' decision was ever filed in the Michigan Supreme Court.

On June 30, 1989, petitioner filed a second petition for writ of habeas corpus in the United States District Court for the Western District of Michigan. On November 9, 1989, respondent-appellee filed a motion to dismiss for failure to exhaust state remedies as required by 28 U.S.C. §§ 2254(b) and (c).

On November 8, 1990, a United States magistrate issued a report and recommendation, recommending the dismissal of the petition. The magistrate determined that *Sandstrom* was not to be applied retroactively based on the United States Supreme Court's holding in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), stating that new rules of law are not to be

applied retroactively in federal habeas corpus collateral review. On December 4, 1990, the district court issued an opinion and order adopting the report and recommendation of the magistrate in toto without addressing the exhaustion issue. *Cain v. Redman,* 757 F.Supp. 831 (W.D.Mich. 1990). Petitioner filed a timely appeal.

## II.

This court must first decide whether it should hear this cause. The government contends that petitioner failed to appeal the Michigan Court of Appeals' decision to the Michigan Supreme Court and petitioner's state court remedies have therefore not been exhausted as required by 28 U.S.C. §§ 2254(b) and (c). However, petitioner did attempt to bring the Michigan Court of Appeals' denial of his second delayed application for leave to appeal before the Michigan Supreme Court for review. The district court did not consider whether by making this attempt, petitioner had adequately exhausted his state remedies which is usually a prerequisite to federal collateral review. *See Pillette v. Foltz,* 824 F.2d 494, 496 (6th Cir.1987); *Dombkowski v. Johnson,* 488 F.2d 68, 70 (6th Cir.1973); *Winegar v. Corrections Dept.,* 435 F.Supp. 285, 289 (W.D.Mich.1977), *aff'd without opinion,* 582 F.2d 1281 (6th Cir.1978). Even if it were determined that petitioner had exhausted his state remedies, his failure to make a timely appeal to Michigan's highest court may constitute a procedural default, barring all further federal review in the absence of cause and prejudice. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575–76, 71 L.Ed.2d 783 (1982).

■ However, as the Supreme Court has pointed out, the doctrines of exhaustion and procedural default raise only federal-state comity concerns and are not a jurisdiction limitation of the power of the court. *Granberry v. Greer,* 481 U.S. 129, 131–36, 107 S.Ct. 1671, 1673–76, 95 L.Ed.2d 119 (1987). Therefore, this court, in its discretion, may hear this cause.

■ We believe that in the present case it is in the interest of judicial economy to do so. In *Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir.1987), this court stated that the lack of exhaustion was properly excused by the district court because the federal constitutional claim was plainly meritless and it would be a waste of time and judicial resources to require exhaustion. As this court in *Prather* explained:

> Efficiency includes bringing criminal litigation to a final conclusion. To return this case to the district court for a hearing on exhaustion, possible state post-conviction remedies and perhaps another habeas corpus proceeding, would greatly and wastefully expend judicial resources.

*Id.*

In the present case, it is in the interest of judicial economy for this court to hear this cause in spite of the unresolved issues of exhaustion and procedural default. Although petitioner's federal constitutional claim is not plainly meritless as was the case in *Prather,* we believe it cannot withstand the hurdle of the rule of *Teague v. Lane,* which forbids retroactive application of new rules of law. Therefore, a remand to the district court for a hearing on exhaustion and procedural default would be a waste of time. In other words, even if the district court were to decide that petitioner had sufficiently exhausted his state remedies and that there was cause and prejudice to excuse his procedural default in filing a late notice of appeal to the Michigan Supreme Court, this court would still be barred from hearing the merits of petitioner's constitutional claim if the district court is correct that *Sandstrom* constitutes a new rule of law that cannot be applied retroactively on federal habeas review. In the interest of judicial economy, we therefore will proceed to review the district court's *Teague v. Lane* analysis without requiring a possibly unnecessary resolution of the issues of exhaustion and procedural default.

## III.

Under a *Teague v. Lane* analysis, the threshold issue is whether petitioner,

whose murder conviction became final in 1975, four years before the Supreme Court's decision in *Sandstrom v. Montana,* is entitled to use that decision to challenge his sentence in a federal habeas corpus action.

■ In *Teague v. Lane,* the Supreme Court held that a new rule of constitutional law established after a petitioner's state conviction has become final may not be used to attack the state conviction on federal habeas corpus review unless the new constitutional principle falls within one of two narrow exceptions. 489 U.S. at 310, 109 S.Ct. at 1074. The rationale for the *Teague* rule is that "[s]tate courts are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court [later] discover ... new constitutional commands" invalidating their final decision. *Id.* The Supreme Court felt that a prohibition against applying new rules of constitutional law on collateral review "validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990).

■ Therefore, according to *Teague,* this court must address whether petitioner, in relying on *Sandstrom* to challenge his jury instructions, is impermissibly claiming the benefits of a new rule of constitutional law retroactively. In this regard, the district court stated:

"[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final". *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070 (citations omitted).... The Supreme Court has provided further guidance in analyzing whether a rule is new under *Teague* standards by holding that precedents which "inform, or even control or govern" the intervening decision do not keep it from being a new rule if the precedents do not "compel" the

decision. *Saffle v. Parks,* [494 U.S. 484], 110 S.Ct. [1257] at 1261 [108 L.Ed.2d 415 (1990)].

Applying this analysis to petitioner's case, *Sandstrom* represents a "new rule" within the meaning of *Teague.* Clearly, no case prior to *Sandstrom* invalidated the type of potential burden-shifting jury instruction given in petitioner's case. *Sandstrom* broke new ground by definitively holding that such instructions may be unconstitutional. At the time of petitioner's conviction, no Supreme Court precedent dictated or compelled the result reached by *Sandstrom* eight years later. In fact, *Sandstrom* was not controlled or governed by any particular precedent, but was the result of an analysis of cases generally dealing with the presumption of innocence and the allocation of the burden of proof, such as *In re Winship* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)]....

The foregoing considerations have led at least one court of appeals to hold that *Sandstrom* represents a "new rule" under *Teague. Prihoda v. McCaughtry,* 910 F.2d 1379, 1382 (7th Cir.1990). I likewise conclude that *Sandstrom* is a new rule under the *Teague* analysis.

757 F.Supp. at 834.

We agree with this analysis of the district court. The pervasive use of this type of jury instruction before the Supreme Court's decision in *Sandstrom* is an indication that *Sandstrom* broke new ground and imposed new criteria to be considered in evaluating the constitutionality of jury instructions. In *Butler v. McKellar,* 110 S.Ct. at 1217, the Supreme Court determined that a legal ruling sought by a federal habeas petition will be deemed "new" as long as the correctness of the rule is susceptible to debate among reasonable minds. Prior to *Sandstrom,* it was susceptible to debate that the jury instructions at issue were not a violation of due process as similar instructions were routinely given without challenge. For these reasons, we believe that the Supreme Court's decision in *Sandstrom* creates a new rule of law as defined in *Teague* and *Butler.* Therefore,

this court cannot apply the Supreme Court's 1979 *Sandstrom* decision retroactively to petitioner's 1971 state court conviction unless it falls within one of two narrow exceptions articulated in *Teague*.

### IV.

■ As stated in *Teague*:

First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." Second a new rule should be applied retroactively if it requires the observance of "those procedures that . . . are 'implicit in the concept of ordered liberty.' "

489 U.S. at 307, 109 S.Ct. at 1073 (citations omitted). Petitioner does not argue that the present case falls within the first exception. The district court did not believe a *Sandstrom* error falls within the second exception, stating:

The second *Teague* exception is reserved for " 'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." *Sawyer v. Smith*, [— U.S. —], 110 S.Ct. [2822] at 2831 [111 L.Ed.2d 193 (1990) ] (citing *Saffle*, 110 S.Ct. at 1263; and *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075). Although the precise contours of this exception may be difficult to discern, the Supreme Court has "usually cited *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception." *Saffle*, 110 S.Ct. at 1264. To fit within the second exception, a new rule must do more than improve the accuracy of the trial; it must alter the understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Sawyer*, 110 S.Ct. at 2831. Against these standards, I conclude that *Sandstrom* does not represent one of the "watershed" rules envisioned by *Teague*.

757 F.Supp. at 835. We agree with the district court that a *Sandstrom* error is not within the narrow category of fundamental bedrock procedural elements that come within the exception.

### V.

■ Even if this court were to find that a *Sandstrom* error had occurred in the present case and the jury instructions at issue were unconstitutional, it would not affect the outcome because it would constitute harmless error.

■ The Supreme Court held in *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) that an instruction that shifted the burden of proof on malice "was not 'so basic to a fair trial' that it could never be harmless." *Id.* at 571, 106 S.Ct. at 3102. Similarly, we believe a *Sandstrom* error would not fall within the narrow category of fundamental errors that can never be characterized as harmless.

In the present case, Marleta Winter, an eyewitness to the shooting, testified that she saw petitioner walk up behind Blackman, take something from his pocket and shoot Blackman several times. Mr. Scott, another eyewitness, testified he saw petitioner shoot Blackman several times. The autopsy showed that the victim was shot four times, none of them in the front. The first shot, which (in the opinion of Dr. Frank Hodges, the pathologist) killed Blackman, was in the back where the arm attaches to the body.

Moreover, the district court instructed the jury on self-defense, indicating that self-defense would negate a claim that the killing was unjustified, unprovoked or inexcusable and that the burden as to the truth of the self-defense claim was not on petitioner. If the jury had believed petitioner's allegation of self-defense, the jury instructions at issue would not have had an effect on their decision. We believe the evidence presented based on the eyewitness testimony and the supporting autopsy report of Dr. Frank Hodges left no reasonable doubt that petitioner was guilty of first degree murder. Consequently, any error in the jury instructions was harmless. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## VI.

For all of the above reasons, we hereby AFFIRM the decision of the district court.