**David BUNKER, Petitioner,**

v.

**John JABE, Respondent.**

**No. 90–CV–71098–DT.**

United States District Court,
E.D. Michigan, S.D.

March 19, 1992.

Kenneth M. Mogill, Detroit, Mich., for petitioner.

Becky Lamiman, Lansing, Mich., for respondent.

**OPINION AND ORDER REJECTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS**

ROSEN, District Judge.

This matter is presently before the Court on the Objections of the Respondent to the Report and Recommendation of Magistrate Virginia M. Morgan in which the Magistrate Judge recommended that this Court grant Petitioner David Bunker's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth in this Opinion and Order, the Court finds that the Magistrate Judge's Report and Recommendation must be rejected and that Bunker's Petition for habeas corpus relief should be denied.

Bunker's petition is predicated upon the instructions given by the state trial court in his first degree murder trial. Bunker was tried jointly for first degree murder along with his co-defendant, Robert Casper. In those jury instructions, the trial judge repeatedly instructed the jury that they "may presume an intent to kill ... unless there is evidence to the contrary."

Both Petitioner and Respondent agree that the trial judge's jury instructions violated the rule of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which was decided 12 years after the joint trial of Bunker and Casper. The issue at the heart of the instant Petition is whether *Sandstrom* should be applied retroactively to Petitioner Bunker. The Magistrate Judge determined in her Report and Recommendation that it should.

The Supreme Court addressed retroactivity in habeas corpus proceedings in four 1989 and 1990 cases: *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Butler v. McKellar,* 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); and *Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

In *Teague,* the court limited the scope of federal habeas review and held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced" with two exceptions. 109 S.Ct. at 1069. The court stated that a "case announces a new rule when it breaks new ground or imposes a new obligation on the States or the federal government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time of the defendant's conviction becomes final." *Id.* at 1070.

Relying principally upon *Acosta v. Makowski,* 756 F.Supp. 1018 (E.D.Mich.1991), and the Eleventh Circuit's decision in *Hall v. Kelso,* 892 F.2d 1541 (11th Cir.1990), Magistrate Judge Morgan concluded that *Sandstrom* was not a "new rule" under *Teague* because *Sandstrom* represents "a 'bedrock, axiomatic and elementary' constitutional principle". The Magistrate Judge then went on to find that even if *Sandstrom* is treated as a "new rule", this case fell within the scope of the two exceptions to non-retroactivity set forth in *Teague.*

The *Teague* court carved out two exceptions to its nonretroactivity of new rules holding where (1) the new rule "places certain kinds of primary, private, individual conduct beyond the power of the criminal law-making power to proscribe" or (2) the new rule requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" 109 S.Ct. at 1073. These two exceptions were first set forth in Justice Harlan's separate opinion in *Mackey v. United States,* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (separate opinion of Harlan, J.).

The first of these exceptions was clarified by the Supreme Court in *Penry v. Lynaugh, supra.*

The *Penry* court explained:

Under the first exception articulated by Justice Harlan, a new rule will be retroactive it places "'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" Although *Teague* read this exception as focusing solely on new rules according constitutional protection to an actor's primary conduct, Justice Harlan did speak in terms of substantive categorical guarantees accorded by the Constitution, regardless of the procedures followed. This Court subsequently held that the Eighth Amendment, as a substantive matter prohibits imposing the death penalty on a certain class of defendants because of their status, *Ford v. Wainwright,* 477 U.S. [399] 410, 106 S.Ct. [2595] 2602 [91 L.Ed.2d 335] [1986] (insanity) or because of the nature of their offense *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (rape). In our view, a new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all. In both cases, the Constitution itself deprives the State of the power to impose a certain penalty, and the finality and comity c concerns underlying Justice Harlan's view of retroactivity would have little force. ... *Therefore, the first exception set forth in Teague should be understood to cover not only rules forbidding criminal punishment of certain primary conduct, but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.*

109 S.Ct. at 2952–2953 (citations omitted).

Magistrate Judge Morgan first determined that under the facts of this case, Bunker's petition would fit within the second *Teague* exception which allows retroactive application of a "new rule" where "the likelihood of accurate conviction is seriously diminished." The Magistrate Judge found that without retroactive application of *Sandstrom,* the likelihood of accurate

conviction would be seriously diminished in this case because

the erroneous jury instructions unconstitutionally deprived the petitioner and his codefendant of an opportunity to have the jury consider evidence on intent, seriously diminishing the likelihood of an accurate conviction for the appropriate degree of homicide. Retroactive application here would avoid disparate treatment of similarly situated habeas petitioners.[1]

[R & R at 20.]

Then, relying upon the Supreme Court's recognition in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 987–988, 74 L.Ed.2d 823 (1983), that a *Sandstrom* error relates to "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error", Magistrate Judge Morgan went on to find that the erroneous jury instructions in this case relate to "the substantive categorical guarantee of due process contained in the Constitution", and therefore, concluded that they also fit within the *Penry* construction of the first *Teague* retroactivity exception.[2]

Thus, the Magistrate Judge determined that, whether or not *Sandstrom* is deemed to be a "new rule", because this case fit under either of the two *Teague* exceptions, it should be applied retroactively.

■ However, since the date of the Magistrate Judge's issuance of her Report and Recommendation, the Sixth Circuit decided *Cain v. Redman*, 947 F.2d 817 (6th Cir. 1991). In that case, the Court of Appeals was called upon to determine the precise issue presented in this case—whether *Sandstrom* should be applied retroactively to a habeas petitioner whose murder conviction had become final several years before the Supreme Court decided the *Sandstrom* case.

The district court in *Cain* had determined that *Sandstrom* represents a "new rule" within the meaning of *Teague* and its progeny and that neither of the two *Teague* exceptions to nonretroactivity applied. *See, Cain v. Redman*, 757 F.Supp. 831 (W.D.Mich.1990). The Sixth Circuit af-

1. As indicated above, Petitioner was tried jointly with his co-defendant, Robert Casper. Casper, like Petitioner Bunker, filed a petition for a writ of habeas corpus, several years before Bunker filed the instant Petition. Like Bunker, Casper argued that the same jury instructions at issue here violated the *Sandstrom* rule. In 1986, the district court *granted* Casper's Petition for habeas relief and in 1987, the Sixth Circuit, applied *Sandstrom* retroactively, and affirmed the district court in an unpublished opinion, *Casper v. Grant*, 817 F.2d 756 (6th Cir.1987) (text available at 1987 WL 37288, 1987 U.S.App. LEXIS 6057), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 280 (1988).

2. The Court notes that with respect to this *Teague* exception, the Magistrate Judge appears to have interpreted *Penry*'s construction of this exception as calling for retroactive application of new rules "based on 'substantive categorical guarantees' contained in the Constitution." This, however, was, as the *Penry* court noted, the essence of the exception as carved out by Justice Harlen in his separate opinion in *Mackey;* it was not the construction given to the exception by the *Penry* court. Rather, under *Penry*, by application of the cases decided by the Supreme Court after *Mackey*, this exception applies where a new rule would decriminalize a class of conduct (such as the example of "rape" given by the *Penry* court) or prohibit the imposition of a certain kind of punishment upon a particular class of persons (such as the example given by the *Penry* court regarding the prohibition of imposition of the death penalty upon persons determined to be insane).

By application of the foregoing *Penry* construction of this *Teague* exception, the Court finds that this exception does not apply in this case. *See, Cain v. Redman*, 757 F.Supp. 831, 835 (W.D.Mich.1990), *aff'd*, 947 F.2d 817 (6th Cir.1991). The Court notes that the Sixth Circuit did not address this "first" *Teague* exception in its opinion affirming the district court (which is discussed, *infra*, in this Opinion and Order) because the petitioner in that case did not appeal the district court's finding of nonapplicability of this exception. Nonetheless, this Court agrees with the District Judge Bell's determination that this exception does not apply in cases involving *Sandstrom* jury instruction errors because the *Sandstrom* rule "would neither decriminalize a class of conduct nor prohibit the imposition of a certain kind of punishment upon a particular class of persons." 757 F.Supp. at 835.

Thus, as was the case in *Cain*, if Petitioner here is able to apply *Sandstrom* retroactively, it must be determined that *Sandstrom* is not a "new rule" under *Teague* or that the *Sandstrom* rule fits within the second *Teague* exception. However, as discussed *infra*, since the Magistrate Judge's issuance of her R & R, the Sixth Circuit has determined that *Sandstrom is* a new rule and does not fit within the second *Teague* exception.

firmed the district court's decision. *Cain v. Redman*, 947 F.2d 817, 823.

The Sixth Circuit quoted the district court's discussion regarding when a rule of law is to be deemed a "new rule" under *Teague* and its progeny:

[T]he district court stated:

"[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070.... The Supreme Court has provided further guidance in analyzing whether a rule is new under *Teague* standards by holding that precedents which "inform, or even control or govern" the intervening decision do not keep it from being a new rule if the precedents do not "compel" the decision. *Saffle v. Parks*, [494 U.S. 484], 110 S.Ct. [1257] at 1261 [108 L.Ed.2d 415] (1990). Applying this analysis to petitioner's case, *Sandstrom* represents a "new rule" within the meaning of *Teague*. Clearly, no case prior to *Sandstrom* invalidated the type of potential burden-shifting jury instruction given in petitioner's case. *Sandstrom* broke new ground by definitively holding that such instructions may be unconstitutional. At the time of petitioner's conviction, no Supreme Court precedent dictated or compelled the result reached by *Sandstrom* eight years later. In fact, *Sandstrom* was not controlled or governed by any particular precedent, but was the result of an analysis of cases generally dealing with the presumption of innocence and the allocation of the burden of proof such as *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)....

947 F.2d at 821 (citations omitted).

The Sixth Circuit agreed with the district court's analysis:

We agree with this analysis of the district court. The pervasive use of this type of jury instruction before the Supreme Court's decision in *Sandstrom*

broke new ground and imposed new criteria to be considered in evaluating the constitutionality of jury instructions. In *Butler v. McKellar*, 110 S.Ct. at 1217, the Supreme Court determined that a legal ruling sought by a federal habeas petition will be deemed "new" as long as the correctness of the rule is susceptible to debate among reasonable minds. Prior to *Sandstrom*, it was susceptible to debate that the jury instructions at issue were not a violation of due process as similar instructions were routinely given without challenge. For these reasons, we believe that the Supreme Court's decision in *Sandstrom* creates a new rule of law as defined in *Teague* and *Butler*.

947 F.2d at 821 (citations omitted and emphasis added).

Because the Sixth Circuit determined that *Sandstrom* is a "new rule" under *Teague*, the court then went on to determine whether, as argued by *Cain*, *Sandstrom* fell within the second exception to non-retroactivity set forth in *Teague*, i.e., whether the *Sandstrom* rule requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'"

The district court in *Cain* determined that *Sandstrom* jury instruction errors did not fall within the second *Teague* exception, and the Sixth Circuit agreed:

The district court did not believe a *Sandstrom* error falls within the second exception, stating:

The second *Teague* exception is reserved for "'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." *Sawyer v. Smith*, [497 U.S. 227], 110 S.Ct. [2822] at 2831 [111 L.Ed.2d 193] (1990) (citing *Saffle*, 110 S.Ct. at 1263; and *Teague*, 489 U.S. at 311, 109 S.Ct. at 1075. Although the precise contours of this exception may be difficult to discern, the Supreme Court has "usually cited *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), holding that a defendant has the right to be represented by counsel in all criminal

trials for serious offenses, to illustrate the type of rule coming within the exception." *Saffle*, 110 S.Ct. at 1264. To fit within the second exception, a new rule must do more than improve the accuracy of the trial; it must alter the understanding of the *"bedrock procedural elements* essential to the fairness of the proceeding." *Sawyer*, 110 S.Ct. at 2831. Against these standards, I conclude that *Sandstrom* does not represent one of the "watershed" rules envisioned by *Teague.*

757 F.Supp. at 835. *We agree with the district court that a Sandstrom error is not within the narrow category of fundamental bedrock procedural elements that come within the exception.*

947 F.2d at 822 (emphasis added).

As indicated above, Magistrate Judge Morgan did not have the benefit of the Sixth Circuit's (or the district court's) decision in *Cain v. Redman* at the time that she determined that *Sandstrom* was not a new rule and that even if it was, *Sandstrom* errors fell within the narrow *Teague* exceptions.

The Court is also aware, as the Magistrate Judge noted in her R & R, that the Sixth Circuit did apply *Sandstrom* retroactively in the case of Petitioner Bunker's codefendant, Robert Casper, and affirmed, in an unpublished opinion, the district court's grant of Casper's petition for a writ of habeas corpus. Like the Magistrate Judge, this Court does not like the idea of seeing similarly situated habeas petitioners treated differently. Thus, this case presents the Court with a dilemma. On the one hand, it would be desireable to treat codefendants similarly. On the other hand, the Court is obligated to follow the law of the Sixth Circuit. The Sixth Circuit has squarely held in *Cain* that *Sandstrom* is a new rule of law and that *Sandstrom* errors do not fit within the second *Teague* exception. And, as noted above, this Court finds the other *Teague* exception to be inapplicable in *Sandstrom* cases, as well.

Moreover, there is nothing in the Sixth Circuit's unpublished *Casper* opinion to indicate that the issue of retroactivity was ever raised or even discussed in the case of Petitioner Bunker's codefendant. And, as an "unpublished opinion", it is not controlling precedent which this Court must follow. Conversely, now that the Sixth Circuit has squarely addressed the issue of retroactive application of *Sandstrom* in a *published* decision, this Court is obliged to follow that decision.

For all of these reasons, the Court finds that it must reject the Magistrate Judge's Report and Recommendation and that it must deny David Bunker's Petition for Writ of Habeas Corpus.

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Magistrate Judge's Report and Recommendation in this case be, and hereby is, rejected by this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that David Bunker's Petition for Writ of Habeas Corpus be, and hereby is, DENIED, and this case, accordingly is hereby DISMISSED.